UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

| | |
|---|---|
| **JENNIFER HAYSLEY** ) | |
| ) | |
| **PLAINTIFF** ) | |
| ) | |
| v. ) | CIVIL ACTION NO. 3:21-CV-128-DJH |
| ) | |
| **KENTUCKY LOTTERY** ) | |
| **CORPORATION** ) | |
| ) | |
| **DEFENDANT** ) | |

## COMPLAINT

### I.   PARTIES

1. The Plaintiff, Jennifer Haysley (hereinafter "Haysley" or "Plaintiff"), is a Crestwood, Oldham County, Kentucky resident.

2. The Defendant, Kentucky Lottery Corporation ("KLC" or "Defendant"), is a Kentucky Legislative Act corporation operating and conducting business in Louisville, Jefferson County, Kentucky.

### II.   JURISDICTION AND VENUE

3. This is an action for violations of the Family Medical Leave Act ("FMLA") pursuant to 29 USC §2601 et seq., the Americans with Disabilities Act ("ADA") pursuant to 42 USC §12101 et seq., Kentucky Revised Statute, Chapter 342 et seq. and Kentucky Revised Statute, Chapter 337 et seq.

4. This Court has original jurisdiction pursuant to the provisions of 29 USC §2601 et seq. and 42 USC §12101 et seq.

5. Venue is proper in this district because the actions giving rise to this Complaint occurred in this judicial district. Further, KLC operates and conducts business within this judicial district.

### III. FACTUAL BACKGROUND

6. Haysley is a former employee of KLC.

7. Haysley began her employment at KLC on February 1, 2017 in the position of Lottery Sales Associate.

8. Due to Haysley's extremely hard work ethic, reliability, and success within KLC, Haysley was promoted to the positon of Lottery Sales Representative for the Jefferson Region on May 4, 2018.

9. KLC is an "employer" within the meaning of the FMLA and ADA at all times relevant to this Complaint.

10. Haysley was an "eligible employee" within the meaning of the FMLA, at all times relevant to this Complaint.

11. During her employment at KLC, Haysley had an exemplary work history and an unblemished employment record.

12. During her employment, Haysley had been a reliable and successful employee of KLC.

13. KLC operates on a fiscal year; specifically from July 1 through June 30. For the 2018/2019 fiscal year, Haysley was one of only a very few KLC's Lottery Sales Representatives throughout the entire Commonwealth to hit her sales quota for the year.

14. Due to her excellent performance for the 2018/2019 fiscal year, KLC issued Haysley a monetary bonus for surpassing her annual target in sales.

15. On the morning of October 4, 2019, while Haysley was on-the-job and servicing a Circle K gas station in LaGrange, Kentucky with KLC marketing material, she suffered an extremely serious injury.

16. Specifically, while climbing up the deck of the gas station in order to remove and replace outdated KLC marketing pole wrap, the deck boards collapsed and Haysley proceeded to fall through the deck before catching herself with her left arm. Though she caught herself, the entire left side of her lower body made direct impact with a large steel pole which was directly beneath the deck.

17. Immediately after suffering the workplace injury, Haysley informed KLC's Regional Manager, Culee Jennings (hereinafter "Jennings"), of her injuries and what had just occurred.

18. Jennings requested Haysley to email KLC's HR department in order to inform KLC of Haysley's workplace injury, which Haysley immediately did.

19. On October 7, 2019, Haysley called KLC's HR department and was instructed to seek medical treatment at one of the Company's worker's compensation facilities in order to treat her injuries.

20. Haysley filed a worker's compensation claim against KLC for her October 4, 2019 workplace injury.

21. Haysley was diagnosed with a torn labrum and rotator cuff, bulging discs, and severe neck pain as a result of her October 4, 2019 workplace injury.

22. On October 8, 2019, Haysley sought medical treatment at Baptist Health Occupational Medicine for her workplace injuries. She was ordered to remain off work until "10-9-19," upon which time she was released to return to work under the restrictions of "sit down

duty," "no lifting greater than 10 pounds," "no pushing or pulling greater than 10 pounds," "no prolonged standing/walking" and "no commercial driving." [A copy of Haysley's 10/8/19 work release is attached hereto as Exhibit "1"].

23. Following her initial medical appointment, Haysley immediately notified KLC of her diagnoses, work release, and reasonable work restrictions.

24. On October 14, 2019, Baptist Health Occupational Medicine released Haysley to return to work with the following restrictions: "no lifting greater than 10 pounds, no pushing/puling greater than 10 pounds, no use of left arm/hand, sit down duty only, and no commercial driving." [A copy of Haysley's 10/14/19 work release is attached hereto as Exhibit "2"].

25. Following her work release, Haysley immediately notified KLC that she could return to work with restrictions and that she wanted to return to work; additionally, Haysley provided KLC with a copy of her doctor's work release and restrictions.

26. Following her October 14, 2019 work release, Haysley informed Jennings and KLC's Human Resources Generalist II, Amy Mears (hereinafter "Mears"), on multiple occasions that she was ready, willing, and able to handle any client account issues, reports, paperwork, and/or client calls from home, as it would not violate her work restrictions in any manner.

27. KLC refused to allow Haysley to return to work, falsely stating that it did not have any jobs for her to perform that would abide by her work restrictions, although KLC was extremely short-staffed in multiple departments at the time.

28. KLC placed Haysley on medical leave under the FMLA, although Haysley was ready, willing, and able to perform sit down work, of which KLC had plenty of jobs it could have offered her in order to accommodate her work restrictions.

29. On October 28, 2019 and November 11, 2019, Haysley had follow-up appointments with Baptist Health Occupational Medicine, where she was issued the same reasonable work restrictions. [A copy of Haysley's 10/28/19 and 11/11/19 work releases are attached hereto as Exhibit "3"].

30. As before, Haysley provided her doctor's work release and restrictions paperwork to KLC, again informing KLC that she was ready, able, and willing to return to work and perform office duties.

31. Although KLC had office duties readily available for Haysley, which would have accommodated her restrictions, KLC continued to refuse to place her back to work, instead keeping her on FMLA leave.

32. On November 19, 2019 and December 12, 2019, Haysley was treated by her orthopedic surgeon, Dr. Michael Salamon, who also released Haysley to return to work with the same restrictions of office work only. [A copy of Haysley's 11/19/19 and 12/12/19 work releases are attached hereto as Exhibit "4"].

33. Again, KLC refused to allow Haysley to return to work and perform office duties, even though KLC was actively hiring for such jobs during this time period.

34. Haysley was more than qualified to perform office duties, as she had twenty-two (22) years of previous experience performing offices jobs, prior to her promotion to Sales Representative.

35. On December 5, 2019, Haysley was required to undergo a hysterectomy, which was not related to her workplace injury.

36. On January 6, 2020, Haysley was treated by Dr. Jeffrey Gum at Norton's Leatherman Spine Center.

37. Dr. Gum confirmed Haysley's prior work release and restrictions, permitting her to return to KLC and perform office duties. [A copy of Haysley's 1/6/20 work release is attached hereto as Exhibit "5"].

38. Haysley provided KLC with Dr. Gum's work release and reasonable accommodations of office work only.

39. KLC refused to accommodate Haysley's work restrictions and forced her to remain off work, thereby wasting her protected medical leave under the FMLA.

40. On January 28, 2020, Haysley received a letter from KLC, which stated that Haysley's FMLA leave had been exhausted as of December 27, 2019. Additionally, KLC requested Haysley to provide them with a return to work date and list of work restrictions by no later than February 10, 2020

41. Following receipt of the January 28, 2020 letter from KLC, Haysley immediately contacted KLC's Human Resources ("HR") department, and spoke with KLC's Vice President of Human Resources, Michele Sullivan (hereinafter "Sullivan").

42. During the call, Haysley reminded and informed Sullivan that she had been released to return to work and to perform available office duties since October 9, 2019, but KLC had refused to place her back to work on numerous occasions. Additionally, Haysley informed Sullivan that she was scheduled for a second opinion on her shoulder for February 12, 2020, but that Haysley would provide KLC with an update immediately following that appointment and specifically when she received any confirmation on a surgery date.

43. At the conclusion of the phone call, Sullivan made no reference or indication that Haysley's job position was in jeopardy. In fact, Sullivan told Haysley that KLC only needed to

know whether surgery was required and how long Haysley would be off work if so, in order to arrange coverage for her continued medical leave.

44. In January 2020, Jennings made the following discriminatory comments regarding Haysley's workplace injury, diagnoses, medical leave, disability and worker's compensation claim, including but not limited to: 1) "Jennifer is not coming back!" 2) "She is playing up her injuries;" 3) "Jennifer has learned the worker's compensation system from Jamie and is taking advantage of it;" and 4) "I saw the deck that collapsed on Jennifer, and there is no way she is hurt as bad as she is saying that she is."

45. On approximately January 31, 2020, Haysley called Mears and made a legally protected complaint regarding Jennings' retaliatory and discriminatory statements regarding Haysley's workplace injury, worker's compensation claim, diagnoses from her serious injury, and work restrictions.

46. Upon information and belief, KLC did not undergo any investigation into Haysley's legally protected complaint, nor was Jennings issued any disciplinary actions for his blatantly retaliatory and discriminatory statements about Haysley.

47. On February 12, 2020, Haysley was treated by Dr. Edward Tillett for a second opinion regarding her torn labrum and rotator cuff. Additionally, Dr. Tillett agreed with Haysley's previous work restrictions in that she could not lift anything, but that she could perform office duties.

48. The following day, February 13, 2020, Haysley emailed Sullivan and Mears with an update regarding her shoulder condition, requirement to undergo surgery, and ability to return to work to perform office duties. Additionally, Haysley informed Sullivan and Mears that Dr.

Tillett had not completed his full report, but that she would immediately provide that to KLC when she received it.

49. As it had done since October 9, 2019, KLC refused to accommodate Haysley's work restrictions and allow her to return to work to perform office duties, which KLC had widely available and in which Haysley was ready, willing, and able to perform.

50. On February 18, 2020, Haysley received a phone call from KLC's HR, wherein she was informed that her employment with KLC was being terminated, effective immediately, due to KLC's completely pretextual reasoning of "failure to return from an approved leave of absence."

51. Following Haysley's unlawful termination, KLC has failed to issue Haysley her earned, but unused paid time off ("PTO"), specifically one-hundred fifty-two (152) hours, which amounts to $3,528.15.

52. KLC terminated Haysley's employment approximately three (3) weeks after Haysley engaged in a legally protected complaint regarding Jennings' discriminatory and retaliatory comments.

53. Since Haysley's termination and during the coronavirus pandemic, KLC has allowed and permitted its Sales Representatives to work from home on a full-time basis.

54. KLC could have offered Haysley the opportunity and reasonable accommodation to work from home while she was on light-duty restrictions, as Haysley could have performed all of her normal office duties.

55. Since her unlawful termination and the discriminatory comments made by Jennings, Haysley has suffered from extreme emotional distress, which has required frequent treatment from medical professionals and medications in order to treat her anxiety and depression.

56. KLC forced Haysley to use and exhaust her entire FMLA leave when KLC could have easily accommodated her reasonable work restrictions and placed Haysley back to work performing office duties.

57. KLC had office duties readily available that would have abided by Haysley's work restrictions, yet intentionally refused to allow her to return to work.

58. During the same time period when Haysley was forced off work, KLC hired new employees to perform office duties.

59. Haysley's diagnoses of a torn labrum and rotator cuff, as well as bulging discs, and the fact she had to undergo surgery to repair the fracture constitutes a disability under the American with Disabilities Act ("ADA") pursuant to 42 USC §12102 et. seq. and a "serious health condition" under the Family Medical Leave Act ("FMLA"), 29 United States Code § 2601 *et. seq.*

60. KLC failed to accommodate Haysley's disability and discharged Haysley.

61. KLC was aware of Haysley's disability prior to discharging her.

62. KLC perceived and regarded Haysley as having a disability prior to discharging her.

63. KLC retaliated against Haysley for filing a worker's compensation claim following her on-the-job injury.

64. KLC retaliated against Haysley and terminated her for engaging in a legally protected complaint regarding Jennings' retaliatory and discriminatory statements about Haysley's workplace injury, worker's compensation claim, diagnoses from her serious injury, and work restrictions.

65. KLC terminated Haysley's employment because of her disability and because she filed and pursued workers' compensation benefits under KRS 342.197.

### III.     CLAIMS AND CAUSES OF ACTION

#### COUNT I.     VIOLATIONS OF THE FAMILY MEDICAL LEAVE ACT (RETALIATION)

66. Haysley re-alleges all allegations contained in paragraphs 1 through 65 above as if fully set forth herein.

67. Haysley was an eligible employee under the FMLA.

68. KLC retaliated against Haysley by disciplining and terminating Haysley for taking FMLA-qualifying absences.

69. KLC's actions, as set forth above, constitute retaliation in violation of the FMLA.

70. As a result of KLC's violations of the FMLA, Haysley has been damaged in an amount in excess of the minimum jurisdictional limits of this Court.

#### COUNT II.     VIOLATIONS OF THE AMERICANS WITH DISABILITIES ACT/ DISCRIMINATION ON THE BASIS OF AN EMPLOYEE'S DISABILITY

71. Haysley re-alleges all allegations contained in paragraphs 1 through 70 above as if fully set forth herein.

72. KLC terminated Haysley's employment on the basis of a disability and/or a "perceived" disability and/or a "regarded as" disability in violation of 42 USC §12101 et. seq.

73. As a result of KLC's violations of the ADA, Haysley has been damaged in an amount in excess of the minimum jurisdictional limits of this court.

#### COUNT III.     VIOLATIONS OF THE AMERICANS WITH DISABILITIES ACT/ EMPLOYER'S FAILURE TO PROVIDE A REASONABLE ACCOMMODATION

74. Haysley re-alleges all allegations contained in paragraphs 1 through 73 above as if fully set forth herein.

75. Haysley was a qualified individual with a disability under the ADA, 42 USC §12101 et. seq.

76. KLC failed to reasonably accommodate Haysley's disability in violation of 42 USC §12101 et. seq.

77. As a result of KLC's violations of the ADA, Haysley has been damaged in an amount in excess of the minimum jurisdictional limits of this court.

### COUNT IV. VIOLATIONS OF THE AMERICANS WITH DISABILITIES ACT/ RETALIATION FOR MAKING A COMPLAINT REGARDING DISABILITY DISCRIMINATION & FAILURE TO ACCOMMODATE

78. Haysley re-alleges all allegations contained in paragraphs 1 through 77 above as if fully set forth herein.

79. KLC's actions, as set forth above, constitute retaliation and unlawful discharge in violation of the ADA.

80. As a result of KLC's violation of the ADA, Haysley has been damaged in an amount in excess of the minimum jurisdictional limits of this Court.

### COUNT V. VIOLATIONS OF KRS 342.197

81. Haysley re-alleges all allegations contained in paragraphs 1 through 80 above as if fully set forth herein.

82. KLC discharged Haysley in violation of the anti-retaliation provisions of Kentucky Revised Statutes, Chapter 342 *et. seq.*, and KRS 342.197.

83. As a result of KLC's violation of KRS 342.197, Haysley has been damaged in an amount in excess of the minimum jurisdictional limits of this Court.

### COUNT VI. KRS 337 WAGE AND HOUR VIOLATION

84. Haysley re-alleges all allegations contained in paragraphs 1 through 83 above as if fully set forth herein.

85. KLC has failed to timely and fully pay Haysley her earned but unused vacation time.

86. As a result of the foregoing, Haysley is entitled to monetary damages against KLC as set forth by KRS 337.385, including payment of the wages due to her, liquidated damages, attorney's fees and litigation expenses.

### COUNT VII. MANDATORY RECOVERY OF ATTORNEY'S FEES AND COSTS

87. Haysley re-alleges all allegations contained in paragraphs 1 through 86 above as if fully set forth herein.

88. Haysley is mandatorily entitled to recover her attorney's fees and costs pursuant to the provisions of the FMLA, ADA, KRS 342, and KRS 337.

### IV. PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff, Jennifer Haysley, respectfully prays that she be awarded the following relief and all other relief to which she may be entitled against the Defendant, Kentucky Lottery Corporation:

A. Trial by jury;

B. Judgment against Defendant on all claims asserted herein;

C. Compensatory and actual damages, including but not limited to past and future lost wages and past and future lost benefits;

D. Compensatory damages, including but not limited to emotional distress, mental anguish, humiliation and embarrassment;

E. All statutory remedies provided by the FMLA, ADA, KRS 342, and KRS 337;

F. Liquidated damages pursuant to the FMLA for Defendant's willful violations of the FMLA;

G.      Equitable relief in the form of reinstatement, promotion and/or front pay;

H.      Punitive damages to punish and deter similar future unlawful conduct;

I.      An award of statutory attorney fees, expert witness fees, costs and expenses;

J.      Statutory interest on all monetary damage awards, verdicts, or judgments; and

K.      All other and additional relief to which Haysley may be entitled.


Respectfully submitted,

THE ZOPPOTH LAW FIRM


*/s/ Bradley S. Zoppoth*
Bradley S. Zoppoth
J. Tyler Stocking
6510 Glenridge Park Place, Suite 1
Louisville, KY  40222
(502) 568-8884
bsz@zoplaw.com
jts@zoplaw.com
*Counsel for the Plaintiff, Jennifer Haysley*